Trustees Common School District No. 88 v. B. E. Garvey, &c.

CASE 31—EQUITY—MARCH 22, 1882.

# Trustees Common School District No. 88 v. B. E. Garvey, &c.

### APPEAL FROM OWEN CIRCUIT COURT.

1. The weight of the evidence is, that notices were posted as required by the statute to enable the qualified voters of the district to decide by their votes whether an additional tax of twenty-five cents upon each hundred dollars of property owned by them should be assessed for five years for common school purposes in the district.

:2. Although the person who acted as judge of the election was appointed by the school commissioner of the county, and not elected by the voters of the district, there is nothing in the record to authorize the chancellor to adjudge the election void. When a tax is voted by the voters of a school district, the burden is upon the tax-payer who resists its collection to show that the election is void.

.3. A mere irregularity in conducting the election will not authorize a court of equity to prevent the imposition of the tax which has been voted by a majority of the voters in the district.

·4. No objection was made to the person who acted as judge at the election while it was being held, and it is now too late to raise the question.

·5. The minority, dissatisfied with the vote, applied to the General Assembly for the privilege of a second vote. It was granted, with a result in favor of the tax for five years as first voted.

·6. No rule of equity will authorize an interference with the result of an election twice held, and in both instances imposing the tax.

HALLAM & GORDON FOR APPELLANT.·

1. No objection was made to the judge of the election while it was being conducted, and the appellees are now estopped from objecting.

:2. An irregularity in conducting an election will not affect it nor prevent the imposition of the tax in question.

.3. When a majority of all the qualified voters voted for the tax, and the judge being impliedly accepted by them, the court will not inquire into the manner of his appointment. (Gen. Stat., chap. 18, arts. 2 and 7.)

·4. The act for the benefit of common school district No. 88 was intended to give the voters of the district an opportunity of curing any defects in the former election.

.5. The weight of evidence shows a decided majority for the tax.

Trustees Common School District No. 88 v. B. E. Garvey, &c.

WARREN MONTFORT AND JAS. BLACKWELL FOR APPELLEES.

1. In voting upon the question of district taxation, each voter has the right to demand that the person who presides shall be chosen in the manner prescribed by the statute.

2. "Each county shall annually appoint two discreet voters in each election precinct as judges," &c. (Sec. 1, art. 3, chap. 31, Gen. Stat.)

3. Every requisite of the statute must be complied with. (Cooley on Constitutional Limitations, 521; 3 Cush., 567; 12 Conn., 437.)

4. The attention of the court is called to the case of Roch v. Bridges, 45 Mass., 258.

5. If the legislature intended by the act of March 28, 1880, to remedy any defect in the election of August, 1878, it would have done so in direct terms.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

For the purpose of aiding the common school system of the State, the levying of a district tax is made lawful upon a vote of the people favoring such taxation. The will of the people is ascertained by a vote of the white qualified voters of the district "at the time and place, and in the manner prescribed *in the first section of the seventh article* of the revised school laws for the election of district trustees," &c. Before taking the vote, notices signed by the common school commissioner of the county in which the district lies, and by the trustee of such district, stating the amount and object of the tax proposed to be raised, and the time and place of taking the vote, shall have been posted by the trustee for fifteen days at three or more prominent places in the district. (Secs. 1 and 2 of art. 2, chap. 18, Gen. Stat.)

The first section of article seven in relation to the election of trustees provides that the election shall be held at the school-house of the district, or some convenient place selected by the commissioner. It also prescribes the qualification of voters, and further provides that "no person except a commissioner, or some person residing in the dis-

Trustees Common School District No. 88 v. B. E. Garvey, &c.

trict, shall be competent to act as judge of the election;" and also provides, "*the judge, if not a commissioner, shall be chosen by a majority of the voters present and voting*," &c. (Sec. 1 of art. 7, chap. 18, Gen. Stat.)

An election was held under the section of the statute referred to in school district No. 88, in the county of Owen, upon the question of levying a tax of twenty-five cents on the hundred dollars of property in aid of the common school within that district, with a result favoring the tax by a considerable majority.

The vote was taken in August, 1878, and the tax collected for that year. In July, 1880, the appellees filed a petition in equity in the Owen circuit court asking an injunction to restrain the collection of the tax for the year 1879. It seems that after the vote favoring this tax, those of the district who were dissatisfied with that proceeding, the same having been imposed for the period of five years, applied to the legislature and obtained an act, approved the 28th of April, 1880, authorizing a vote of the qualified voters of the district for the purpose of determining whether or not the levy and collection of this tax should be longer continued, and that election also resulted in favor of the tax.

The first cause assigned for an injunction is, that notices of the election had not been posted in the district, as required by the common school law, fifteen days prior to the election; and also, the notices informed the people that the vote would be on the taxing of the real estate only.

It is sufficient to say, in regard to this branch of the case, that the proof is conflicting as to the manner of posting the notices and the contents, with the decided weight of the testimony in favor of the fact that they were given in com-

pliance with the statute, and this, if for no other reason, disposes of that question.

The second cause assigned is, that the county commissioner did not act as judge of the election, and the same was held without a judge or officer to preside over it, and that many of the votes were recorded by the voters themselves and other unauthorized persons. The first section of article seven of chapter eighteen, General Statutes, regulating the mode of electing trustees, and which is to regulate the vote on the question of taxation, as required by sections 1 and 2 of article 2, same chapter, provides that the judge of the election, if not a commissioner, "*shall be chosen by a majority of the voters present and voting.*"

It seems from the testimony in the case that James Gayle, who, it is claimed by the appellants, acted as judge, was directed to act by the county school commissioner, and there is nothing in the record showing that the people voted on the question, or made any choice except by their votes for and against the tax, Gayle presiding as judge of the election. The section of the statute regulating the manner of selecting a judge of the election is so framed that, if literally followed, no election could be held under it. The judge of such an election is to be chosen as the judge of an election of school trustees, and that judge is to be chosen *by a majority of the voters present and voting.* This, of course, does not mean that a majority of all the votes shall be cast for the judge of the election as well as the trustees, so as it may be known whether the voters were for the judge or against him ; and if it is to be interpreted as meaning that the voters·first assembled are to select the judge, it does not provide how many shall be present when he is selected, or the mode of taking the vote or procuring the evidence of

the fact that he was selected. If the voters are all to select the judge, then it follows that there is no judge until the election is over; and if one or two who first assemble should select the judge, then the voice of the voters generally has not been consulted.

The statute, however, should be construed with a view of carrying into execution the legislative will; and when an election has been held and the tax imposed, the burden is on the tax-payer who resists its collection to show that the election is void. A mere irregularity in conducting it will not authorize the chancellor to interfere and prevent the imposition of a burden the tax-payer has assumed for the purpose of aiding a great public interest. While the power to tax is a governmental power, and its exercise should be confined within the spirit at least of the law authorizing it, we see no such departure from the authority conferred by the taxing power in this case as would justify the conclusion that this election was not only irregular, but, in fact, void.

The judge of the election presided after full notice had been given of the object intended to be accomplished by the vote. The people assembled in accordance with the notices published by authority of the commissioner, and there was a full and fair expression of sentiment on the issue raised. The judge signed and made affidavit to the correctness of the poll-books, and returned them to the county court as required by law. He was a voter and resident of the district. Those assembled not only failed to make any objection to him as judge, but, by their vote, consented that he should preside and conduct the election, and are as much bound by the result as if he had been chosen judge by the first voter approaching the polls. Gayle was, in fact, selected by the voters to preside at the election, and it is

now too late to raise such a question.   Besides, the people·
of the district, recognizing the legality of the first election,
but becoming restive under the burden imposed, applied ,
to the legislature to have another opportunity of relieving
themselves from its payment, and a vote was authorized to·
be taken on the question as to whether the tax should be·
longer continued.   So the people of the district have twice
voted in favor of · aiding the educational interests of that
particular district, and whether the last enactment is to be·
looked upon as a curative statute or not, the will of the·
district should not be disregarded upon such technical sug-
gestions ; and certainly a court of equity will endeavor to so·
construe the statute in regard to the appointment of a judge
of the election as will make it practical, and thereby secure·
that aid so necessary to the educational interests of the state.

It is also urged in argument that at the last election
illegal votes were cast, and other irregularities practiced that
must invalidate the election, and the chancellor is asked
through his commissioner to purge the polls, and reverse
the decision of the judges at the last election, upon the·
ground that they suffered illegal votes to be cast.   It is not
pretended that the law did not authorize the imposition of
such a tax, or that the property levied on was exempt from
taxation, so there is nothing in the record that will authorize
the chancellor to adjudge the election void and the taxation
illegal; and although this is not strictly an election, the door
of a court of equity will not be opened to those whose only
purpose is to invite the chancellor to supervise the action
of judges of an election for the purpose of determining
whether or not they permitted illegal votes to be cast, and
if so, to declare the election void, or some other person
than the one chosen to have been elected.   Whether, in

an action for usurpation of office, or in a proceeding by *quo warranto*, such evidence will be admitted or inquiries made, is not necessary in this case to determine. The authorities are not in harmony on the question, but it is certain that the chancellor will not exercise such a jurisdiction. (Cooley's Constitutional Limitations, page 790.) The tax of twenty-five cents on the one hundred dollars is sufficiently definite. It enables the tax-payer to know the sum he has to contribute, and he can approximate the aggregate sum that will be raised by the levy. This case is unlike that of the Campbell County Court v. Taylor. In that case the legislature authorized the county court to submit a question of taxation to the voters of Campbell county, and the court submitted the question, without any legislative authority, to the voters of a part of the county only. The right to tax in this case is conceded, and the principal objection urged is as to the manner in which the judge of the election was chosen. In our opinion, he was selected by the voters as well as the commissioner, and that there is nothing in this record authorizing an injunction.

Judgment reversed, and caused remanded, with directions to dissolve the injunction and dismiss the petition.

(Liepage County v. Jenks, 45 Illinois.)