CASE 27—CONTESTED ELECTION—MAY 5.

## Cowan v. Prowse.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

1. CONTESTED ELECTION—APPEAL.—Upon appeal to the circuit court from the decision of a contesting election board, the court may grant leave to either party to supply material and necessary proof that the contesting board had erroneously denied a reasonable opportunity to procure. But with that exception no other proof can be heard by the circuit court than that which was heard by the contesting board.
2. REGISTRATION LAW.—Legislative power exists to enact a registration law either local or general in its character; no unreasonable or illegal conditions being imposed upon those having the right to vote.

Cowan v. Prowse.

3. SAME.—Under the Christian county registration law, if a person who is entitled to vote obtains a certificate of registration, and has his vote duly recorded, it is legal although the certificate may have been procured by fraud, provision being made for punishing him by imprisonment, and not by disfranchisement.

4. SAME.—Under a special act of the Legislature establishing an additional voting place in an existing precinct, it is not necessary that the vote of one residing in that precinct should be cast at the identical voting place where he registered.

5. SAME—REGISTRATION AFTER HOUR PRESCRIBED.—Testimony about a question of time being generally uncertain and conflicting, especially when reckoned by minutes, a court should not take cognizance of a complaint that voters were permitted to register after the time of day prescribed by law, except where there has been a palpable or flagrant disregard of the law by the officers.

6. SAME—NATURALIZATION.—An alien who has enlisted in the army or navy and been honorably discharged therefrom, may become a citizen of the United States without any previous declaration of his intention to become such, upon taking the oath of allegiance and of abjuration of allegiance to any other sovereign, provided the court admitting him be satisfied by competent proof of his having been honorably discharged · from the service of the United States, of his good moral character, and previous residence of one year. And if he in fact made the required oath of present allegiance and abjuration, and that fact is stated in the certificate, it is immaterial that the record shows the declaration to have been one of intention merely. Nor is it indispensable that there should be a formal order of court admitting him to become a citizen. And, although the record does not show that he filed a certificate or made other proof of his honorable discharge from the service, yet after long and undisputed exercise by him of the right of a citizen, a reasonable presumption arises that the required proof was made, every other requirement of the statute having been complied with.

7. A VOTE OBTAINED BY A BRIBE IS A BAD VOTE and should, upon proper proof, be rejected by a tribunal trying a case of contest, a judgment of conviction for the offense not being necessary in order to exclude the vote. Nor is it indispensable that there should be other evidence of the bribe than the testimony of the voter himself.

8. CRIMES WHICH DEPRIVE ONE OF RIGHT OF SUFFRAGE.—Under Section 4 of Article 8 of the Constitution of 1850, and Section 15, Article 12, Chap. 33, General Statutes, enacted pursuant thereto, a person convicted of any crime or high misdemeanor is deprived of the right of suffrage. Therefore, persons convicted of the offenses of malicious shooting and malicious cutting, which are made felonies by statute, are not entitled to vote.

9. WHERE THE CONSTITUTION IMPERATIVETY REQUIRES CERTAIN LAWS TO BE PASSED, in construing a statute enacted pursuant to that require-

ment, a reasonable presumption arises that the Legislature intended such meaning should be given the language of the statute as is necessary to faithfully carry out the mandate of the Constitution.

10. EXCLUSION FROM SUFFRAGE.—A conviction of crime in a Federal court has the effect to exclude the person convicted from office and suffrage in this State as if convicted in a court of this State of a crime against its statute.

11. A PARDON BY THE PRESIDENT OF THE UNITED STATES RESTORES THE RIGHT OF SUFFRAGE to one who has been deprived of the right by a conviction of crime in a Federal court.

12. CORRECTION OF MISTAKE IN RECORDING VOTE.—In an election contest the court will not undertake to add to the record and count votes it does not show were cast, or to take from the record votes it shows were actually cast. And while the court may correct a mistake of the clerk in recording for a candidate a vote which was cast for his opponent, it does not necessarily follow from the fact that a mistake was made that it was the mistake of the clerk and not of the voter; and whether an alleged mistake was made by the clerk being a question of fact, this court will not reverse the finding of the contesting board and the circuit court that the evidence is insufficient to overcome the presumption of the verity of the record.

13. POWER OF COUNTY COURT TO CHANGE ELECTION PRECINCTS.—Every order of a county court for the transfer of the voting place of a person without changing the division line of the two precincts so as to include his place of residence within the boundary of the one to which the transfer is attempted to be made is absolutely void. And while it is not indispensable for precinct lines to be fixed by instrumental survey and measurement, they should be so fully and clearly described by roads, water courses, adjacent farms or other known objects as that their location will be certain, or capable of being made certain.

An order that transfers the voting place of a person by changing the division line so as to include his farm in the precinct to which he applies to be transferred is valid, and so is an order providing for change of the line of a designated precinct so as to include the person mentioned, as the farm or place of residence of such person is to be treated as the object by which the new line is intended to be described.

JOE McCARROLL FOR APPELLANT.

1. An election contest must be tried upon appeal to the circuit court, upon the same record submitted to the contesting board. (Rev. Stats., chap. 32, art. 7, sec. 4; Gen. Stats., chap. 33, art. 7, secs. 6, 7; Newcum v. Kirtley, 13 B. M., 517; McCrary on Elections, secs. 310, 311, 347, 381; Helm v. Short, 7 Bush, 623.)

2. The evidence is not sufficient to show any mistake in the record of the vote. Public policy forbids that the court should be allowed to tamper

Cowan v. Prowse.

with the returns made by election officers for trivial reasons. (Anderson v. Winfree, 85 Ky., 601.)

3. The orders of the county court relied upon were not effectual to change the precinct lines. They do not define the proposed change, if indeed any change is sought to be made by them in the precincts. (Gen. Stats., chap. 33, art., 2, sec. 3.)

Besides, the orders are void because it is not shown that any of the preliminary steps required by the law to give the county court jurisdiction had been taken. (Gen. Stats., chap. 33, art. 2, sec. 3; Singleton v. Cogar, 7 Dana, 479; Gilbert v. Bartlett, 9 Bush, 53; Flelcher v. Leight, &c., 4 Bush, 306; 7 Bush, 297; Brownfield v. Dyer, 7 Bush, 506; Jones v. Hoffman, 18 B. M., 656; Freeman v. Strong, 6 Dana, 283; Small v. Small, 11 Bush, 46; Adams v. Tiernan, &c., 5 Dana, 396; Jacob's adm'r. v. L. & N. R. Co., 10 Bush, 267; Craig v. Barker, &c., 4 Dana, 601; Mitchell v. Bond, &c., 11 Bush, 615; Newcomb's Ex'or. v. Newcomb, 13 Bush, 558; Green v. McKinney's heirs, 6 J. J. Mar., 197.)

4. The registration law is valid. (Commonwealth v. McClellan, 83 Ky., 688.) And even though unconstitutional in part, it is valid in so far as it is not in conflict with the Constitution. (3 Bush, 443.)

A fraudulent registration defeats the right to vote. (McCrary on Elections, sec. 21.)

5. Until there has been a conviction, the election officers have no right to refuse to allow one to vote because he has violated the law against receiving bribes. (Commonwealth v. Jones, 10 Bush, 740; Burkett v. McCarty, 10 Bush, 759; McCrary on Elections, sec. 20.)

6. Under the registration law a voter may register at one of two voting places in a precinct, and vote at the other.

7. Housebreaking, and malicious cutting and shooting are included in the list of crimes for which a man is disfranchised. (Anderson v. Winfree, 85 Ky., 601.)

8. The statute which provides that persons convicted of certain crimes shall *forfeit* the right of suffrage does not prevent an infant who has committed one of the designated crimes from acquiring the elective franchise. (Gen. Stats., chap. 33, art. 12, sec. 15.)

9. There is no proof that Vaughn was ever convicted and sentenced to the U. S. penitentiary for any offense. The best evidence must be produced, and the best evidence of a court record is the record itself. (1 Greenleaf on Evidence, sec. 501, *et seq.*)

And if convicted in a United States court, it is, so far as we are concerned, a conviction in a foreign jurisdiction of which this court will not take cognizance in a *quasi* criminal proceeding such as this is. (Story's Conflict of Laws, secs. 620 to 625; 1 Greenleaf, secs. 374, 375, 376.)

But even if the conviction disfranchised Vaughn, his pardon by the President removed the disability.

10. To complete the naturalization of a foreigner the formal declaration that he is "admitted to all the rights of a natural born citizen," is not necessary. (McCrary on Elections, p. 83.)

J. I. LANDES, JAMES BREATHITT, HARRY FERGUSON FOR APPELLEE.

1. The circuit judge was under the law a trier of the facts of the case *de novo.* (Gen. Stats., chap. 33, art. 7, sec. 6; Anderson v. Winfree, 85 Ky., 612.)

2. Rule for determining questions of residence or domicile. (Tipton v. Tipton, 87 Ky., 245; Gen. Stats., chap. 33, art. 3, sec. 8.)

3. A mistake of the clerk in recording a vote may be corrected and the vote counted as it was really cast. (Anderson v. Winfree, 85 Ky., 607; Ramey v. Ratcliffe, 81 Ky., 468.)

4. The crimes of burglary and of malicious shooting and cutting are not embraced in the category of crimes conviction of which operates to forfeit the right of suffrage. (Constitution, art. 8, sec. 4; Gen. Stats., chap. 33, art. 12, sec. 15; Anderson v. Winfree, 85 Ky., 597.)

5. As there was no evidence of any fact required to be proved in order to the naturalization of Moayon, and no judgment admitting him to citizenship, we must take the action of the court to be what it purports to be, viz.: a record of the fact that Moayon then and there made his "declaration of intention to become a citizen of the United States," and nothing more. (Rev. Stats. U. S., secs. 2165 to 2174.)

6. Votes obtained by bribery should be excluded. (Constitution, article 8, sec. 4; Gen. Stats., chap. 33, art. 12, secs. 11, 15; State v. Olin, 23 Wis., 327; Bromberg v. Haralson, 4 Cong. El. Cases, 363.)

And the fact that a vote has been obtained by bribery may be established by the testimony of the voter himself. (Cheek v. Commonwealth, 87 Ky., 42.)

7. Votes cast after seven o'clock should be excluded. (Varney v. Justice, 86 Ky., 596.)

8. The registration law is unconstitutional because of provisions which unnecessarily impede the exercise of suffrage. (People *ex rel.* Van Bokkelen v. Canady, 21 Am. Rep., 268; Cooley's Con. Lim., 603; City of Louisville v. Cochran, 82 Ky., 34; Daggett v. Hudson, 54 Am. Rep., 834; City of Owensboro v. Hickman, 12 Ky. Law Rep., 579; Capen v. Foster, 12 Pick., 485; s. c., 23 Am. Dec., 632; Monroe v. Collins, 17 Ohio St., 666; Page v. Allen, 58 Pa. St., 338; Dells v. Kennedy, 35 Am. Rep., 788; State v. Baker, 38 Wis., 71; State v. Butts, 31 Kansas, 554.)

9. The registration law, if constitutional, ought to receive a liberal construction. Therefore there can be no such thing as "fraudulent registration" by a constitutionally qualified voter whose name has been entered on the registry on one of the days, and within the hours, prescribed by the act for registering.

10. If the registration law is valid, it ought not to be construed so as to allow a voter to register as a voter in one precinct, and to vote at another or different precinct.
11. The orders of the county court changing precinct lines and places of voting in the county are valid. (Constitution, art. 2, sec. 5; Rev. Stats., chap. 32, art. 2, sec. 3; Act of Mch 6, 1854, Rev. Stats., vol. 1, p. 454; Act of Jan. 25, 1856, Rev. Stats., vol. 1, p. 455; Act of Mch 16, 1871, Session Acts 1871, vol. 1, p. 67; Gen. Stats., ed. 1887, p. 507.)

    The county court as to this matter is not a court of special or limited jurisdiction, but a court of *general* and *exclusive* jurisdiction. And where the jurisdiction over the subject matter is complete and unlimited, the action of the court will always be taken to be within its authority and jurisdiction unless the contrary appears. (Jacob's admr. v. L. & N. R. Co., 10 Bush, 269; Fletcher's adm'r. v. Weir, &c., 7 Dana, 347; Newcomb's Ex'or v. Newcomb, 13 Bush, 562; Cooley's Const. Limit. (5th ed.), 502; Master's Ex'or v. Bienker, 87 Ky., 5; Churchill v. Grundy, 5 Dana, 102; McIlvoy v. Speed, 4 Bibb, 86; Commonwealth v. Morrison, 4 Bibb, 336; Wallace v. Usher, 4 Bibb, 510; Shelby County Court v. Cumberland & Ohio R. Co., 8 Bush, 219; Singleton v. Cogar, 7 Dana, 479; Stahl v. Brown, 84 Ky., 327; Deer v. Wilson, 84 Ky., 15; Honaker, &c, v. Cecil, 84 Ky., 202; Lessee of Grignon, &c. v. Astor, &c., 2 How., 319; Kennedy &c. v. Bank of Georgia, 8 How., 587; Williams v. Haynes, 19 Am. St. Rep., 752; Wilkerson v. Schoonmaker, *Idem*, 803; Shackelford v. Miller, 9 Dana, 277.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

The question in this case is whether appellant, Cowan, or appellee, Prowse, was legally elected clerk of the Christian county court, at the August election, 1890.

According to face of the poll-books, the latter received a majority of votes cast, obtained a certificate of election, and took possession of the office. But the contesting board decided that ninety-two of three thousand two hundred and fifteen votes recorded for him were illegal, while seventy-three of three thousand two hundred and ten votes recorded for Cowan were illegal, and as a result, the latter had received a majority of the legal votes cast, and was duly elected to the office. Upon appeal to the circuit court, however, that decision was reversed, the

judgment being that Prowse had received of the legal votes cast a majority of one and was entitled to the office.

It appears that in the notice of contest, and also in the response and counter-notice, the legality of numerous votes recorded was put in question upon grounds stated by the parties respectively and a large number of depositions taken and read before the contesting board, the decision of which was not made until January 21, 1891. And a preliminary question thus arises, whether depositions taken after that decision was rendered, but before the ensuing term of the circuit court, to which each party excepted, were properly excluded on trial of the appeal.

Under section 4, article 7, chapter 33, General Statutes, the judge of the county court and two justices of the peace nearest the court-house constitute a board for determining contested election of an officer elective by voters of a county or district therein. Section 6 gives to any person in interest right of appeal from a decision of the board to the circuit court, and from there to the Court of Appeals, as in other cases. Section 7 is as follows:

"A copy of the decision and the original papers and *depositions* used in the contest shall be filed by the board in the circuit court. *The proof shall be taken in depositions and no oral evidence shall be heard on the trial of the appeal.*"

And section 9 provides that "the appeal shall be placed on the equity docket and tried in equity as in other actions."

In the same article a board is provided for to determine contested election of any officer, other than Governor or Lieutenant Governor, elective by voters of the whole State, or a judicial district thereof. But substantially the

same mode of proceeding is provided for both boards; by sub-section 4, section 5, depositions properly taken are required to be read in evidence by each; and a fair implication from the language there used is, that neither can call for or hear other proof.

There is, however, an important difference in the provisions applicable to the two boards in that an appeal is allowed from a decision of the county board only. And hence, the special provision in section 7 that "the proof must be taken in depositions and no oral evidence shall be heard on trial of the appeal." But it does not seem to us it was thereby intended to authorize depositions to be taken at the will of the parties after final decision of the contesting board; for clearly the Legislature did not contemplate those used by the board, and in express terms of that section required to be filed in the circuit court, would be arbitrarily discarded and the parties thus needlessly forced to prepare anew for trial of the appeal.

Sub-section 1, section 5, in terms restricts a contestant to the grounds of contest stated in his original notice; yet ample time is allowed in which to sustain them by proof in depositions, upon trial by the contesting board. And, although the statute does not expressly require it, still it is not only plainly just, but was manifestly intended, that if the incumbent files a response relying upon other grounds to defeat the contestant than his *prima facie* right to the office, which was done in this case, he must specifically state them and be likewise restricted; for sub-section 3 authorizes him as well as the contestant to proceed to take proof in depositions immediately after notice of contest.

As then issues of fact not subject to change are made up, and all proof either party has chosen to make is before the contesting board when its decision is rendered, there is no reason why an appeal from it should not without farther preparation stand for trial at the first term of the circuit court. To keep the case open would enable one party to put the other to unreasonable trouble and cost, and also protract indefinitely a contest it is the public interest and distinctly indicated policy of the statute to terminate as early as practicable.

Section 726, Civil Code, relates exclusively to appeals from judgment of certain courts of inferior jurisdiction, and as evidence heard on trial of an action in such court is oral, an appeal therefrom is properly required to be docketed and stand for trial in the circuit court as an ordinary action, and has necessarily to be "tried anew as if no judgment had been rendered." But that section has no application, even by analogy, to an appeal from the decision of a contesting board on a trial upon which as well as on trial of an appeal therefrom evidence taken in depositions only can be heard. The circuit court might grant leave to either party to supply material and necessary proof that the contesting board had erroneously denied a reasonable opportunity to procure; but the depositions in question not being so taken were properly excluded.

1. The lower court adjudged recorded votes illegal, as follows:

*First*, Forty for Prowse and thirty-two for Cowan cast out of districts in which the voters severally resided; *second*, four for Prowse and three for Cowan of persons non-resident of the State or not resident long enough; *third*,

one for Prowse and three for Cowan, of minors; *fourth*, four for Cowan of non-residents in the State; *fifth*, one for Prowse, failure to register; *sixth*, five for Prowse and one for Cowan, of persons convicted of crimes; *seventh*, four for Cowan of persons of foreign birth not naturalized; making an aggregate of fifty-one illegal votes of those classes cast for Prowse, and forty-seven for Cowan.

Exceptions were taken by the parties respectively as to many of the votes so adjudged illegal, and also on account of refusal of the court to exclude many others, challenged upon similar grounds. But as no question of law is involved in any of the very large number of such cases, except as hereafter indicated, and there is evidence conducing to support the finding of fact by the court as to each of them, we think it should not be disturbed by this court, especially as it agrees with the finding of the contesting board, except as to two votes whereby the parties were alike affected.

2. The contesting board found two votes recorded for Prowse illegal, because the voters had not registered as required by "An act to provide for the registration of voters in county of Christian," approved April 16, 1890, and three others for him illegal because fraudulently registered.

The constitutionality of such statute is not an open question in this State; it having been expressly held in Commonwealth v. McClelland, 85 Ky., 686, that legislative power exists to enact a registration law either local or general in its operation, and counsel do not indicate any provisions in that act by which conditions unreasonable or illegal in any respect were imposed upon those having the right to vote at the election held in Christian county,

August, 1890. But the court properly adjudged but one of the votes referred to illegal upon the ground that the voter had failed to register. And even if the other three had, contrary to the court's finding, fraudulently procured certificates of registration, their votes would not have been necessarily invalid, if they were in all other respects legal voters,-about which there seems to be no question. For under the statute, if a person who is entitled to vote obtains a certificate of registration and has his vote duly recorded, it is legal; provision being made for punishing him by imprisonment, not by disfranchisement, if he fraudulently procures such certificate.

Exception was taken to the decision as to one vote recorded for Cowan, upon the ground he had not registered at all, and to three others who registered at one voting place and voted at another, in the same precinct or district. Whether the first-mentioned person registered or not is a question of fact decided by the court affirmatively, and for the reasons heretofore indicated, we will not undertake to revise that decision. It appears that by a special act of the Legislature, an additional voting place had, previous to the registration act, been established in each of two existing precincts, the boundaries of which had not however been changed. But it does not seem to us the latter act fairly construed makes the legality of a vote cast in the precinct of the voter's residence depend upon it having been recorded at the identical voting place in that precinct where he registered.

Another ground of exception is, that some of the voters registered after the time of day prescribed by law; and in that connection we will consider an objection made to other votes upon the ground they were cast and recorded

later on the day of election than allowed.   As testimony
about a qustion of time is generally uncertain and con-
flicting, especially when reckoned by minutes, a court
should not take cognizance of such matter, except when
there has been a palpable or flagrant disregard of the law
by officers, which is not made to appear in this case.

3. Another one beside the four votes adjudged illegal,
was challenged upon the ground the person casting it was
of foreign birth, and not naturalized.   It is shown by the
record that in 1870, he appeared in open court and filed
declaration of his intention to become a citizen of the
United States, at the same time making oath that in 1861
he enlisted in the marine service of the United States,
and was honorably discharged therefrom in 1864.   He
also there made oath to support the Constitution of the
United States and renounced and abjured allegiance to any
foreign Prince, Potentate, State and sovereignty whatever,
and particularly that of King William, of Holland, where
he was born.   At the same time appeared two witnesses
who testified he was a man of good moral character.   And
he has ever since resided, and exercised without question
the right of suffrage, in this State.

The statute authorized an alien who has enlisted in the
army, or by construction, navy, and been honorably dis-
charged therefrom, to become a citizen of the United
States without any previous declaration of his intention
to become such, upon taking the oath of allegiance and
of abjuration of allegiance to any other sovereignty, pro-
vided the court admitting him be satisfied by competent
proof of such person having been honorably discharged
from the service of the United States, of his good moral
character, and previous residence of one year.

There does not appear to have been a formal order of
court admitting the person in question to become a citi-
zen, nor does the statute in terms make such order indis-
pensable.    Although the record shows the declaration to
have been one of intention merely, he in fact, as fully
stated in the certificate, made oath not of his intention
to apply to become a citizen of the United States, but of
present allegiance and abjuration required as condition of
being admitted to be a citizen.    The record does not show
that he filed a certificate, or made other proof of his hon-
orable discharge from the service, but after such long
and undisputed exercise of the right of a citizen, and in
view of his compliance with every other requirement of
the statute, a reasonable presumption arises that compe-
tent and satisfactory proof of that fact was made in court.
In our opinion his vote was correctly decided to be legal.

4. But we think the votes cast for Cowan by the two
persons alleged to have been bribed ought not to be
counted.    The contesting board refused to strike from
the list the name of either of them upon the ground
there had not been a judgment of conviction for the
offense; while the circuit court held, in substance, that
although it would be proper to discard votes of such
persons, upon proof of the offense, their own testimony
should never be credited.    Neither position is tenable.
Of course a verdict and judgment must precede the pun-
ishment of fine and exclusion from office and suffrage,
which section 11, article 12, chapter 33, General Statutes
provides a person shall suffer who is guilty of receiving
a bribe for his vote at an election; but it has never been
doubted that a vote obtained by direct pecuniary or other
valuable consideration is a bad vote, and ought to be

rejected upon proper proof by a court or tribunal trying a case of contest. (McCrary on Elections, sections, 180–1.)

It may be true, as said by the lower court, that a person who testifies he, for a bribe, corruptly cast his vote, thereby affords indubitable evidence of his own infamy; but it does not necessarily follow his testimony should be in every case discredited. One of the offenders only testified; but he stated that, intending to vote for Prowse, he and the other, for the consideration of five dollars paid to each of them, voted for Cowan, and gave the name of the person who made the bargain with and directed them where to go in order to get the money; also the name of the person who, in pursuance of the bargain, paid it to them. It is idle to say two persons thus implicated would not have contradicted and shown the falsity of that statement if they could have truthfully done so; as it would be unreasonable to discredit testimony, the truth of which is thus demonstrated.

5. Five votes recorded for Prowse were adjudged illegal because the persons who cast them had been convicted of felonies prior to the election. Whether those votes were properly held illegal depends upon article 8, section 4 of the Constitution, and the statute enacted in pursuance of it. That section is as follows: "Laws shall be made to exclude from office and from suffrage those who shall be thereafter convicted of bribery, perjury, forgery or other crimes or high misdemeanors." The statute provides that "any person convicted of *robbery*, *forgery*, *counterfeiting*, bribery *or* perjury, or *other like crime*, shall forfeit his right of suffrage and his right to hold office." (Section 15, article 12, chapter 33, General Statutes.)

As to the offenses of which three of the persons were

convicted there can be no question; one of them being house-breaking, one horse-stealing and the other burglary. Though none of them are specially mentioned in either the constitution or statute, yet, according to the rule applied in Anderson v. Winfree, 85 Ky., 596, they must each be regarded as comprehended by both, it having been there held that a person convicted of grand larceny was thereby disfranchised and his vote properly excluded. And such being the case, it would seem a person convicted of either of the three offenses in question should be treated as also disfranchised.

The offenses of which the other two were convicted are malicious shooting and malicious cutting, both made by statute felonies, and, therefore, properly classed as crimes or high misdemeanors in meaning of the Constitution. It will, however, be seen that the language of it is somewhat different from that of the statute in two respects: *first*, only bribery, perjury and forgery are in terms designated in the Constitution, while in the statute the additional crimes of *robbery* and *counterfeiting* are named; *second*, the alternative words of the Constitution are " other crimes or high misdemeanors," while those of the statute are " other like crimes;" and construing the latter by itself a fair inference would be, the Legislature intended to exempt from its operation such crimes as malicious cutting or shooting, and even murder, rape and arson. But, although the section of the Constitution quoted is not self-executing, it is plain and imperative. Consequently a reasonable presumption arises that the Legislature intended such meaning and effect should be given to the language of the statute as necessary to faithfully and strictly obey and carry out that mandate.

It is very clear that the language of the Constitution, which is general and not at all restrictive, comprehends every crime of whatever character, as well as high misdemeanors.   If it was not so the statute in question would, in respect to *robbery* and *counterfeiting* not mentioned in the Constitution, be invalid; for the Legislature has no power to exclude any person from office or suffrage, except to the extent it is derived from the section in question.   Therefore, the lower court, in our opinion, properly adjudged the votes of the two persons convicted of malicious cutting and malicious shooting, as well as the three others, illegal; but erred in deciding the vote cast for Cowan by the person convicted of mail robbery, also illegal; for by the only evidence that he had been so convicted, which was his own confession, it is shown he was pardoned by the President of the United States before expiration of his term of punishment.   Therefore, though according to a reasonable construction of the Constitution and statute, his conviction of the crime of mail robbery in the Federal Court would have had the effect to exclude him from office and suffrage, as if convicted in a court of this State of a crime against its statute, still the pardon operated, in the language of Blackstone, " to make the offender a new man ; to acquit him of all corporal penalties and forfeitures annexed to that offense for which he obtained his pardon." (4 Bl. Comm., 402.)

In Jones v. Board of Registrars, 56 Miss., 766, where the precise question before us arose, it was held that the effect of a pardon by the President of the United States was to restore a person convicted in a Federal Court to the right of suffrage, from which he would have been

otherwise excluded in virtue of the Constitution and statute of that State. And such seems to be the settled doctrine. (*ex-parte* Garland, 4 Wall., 333; United States v. Padelford, 9 Wall., 531; Carlisle v. United States, 16 Wall., 147; Knote v. United States, 95 U. S., 149.)

It has been also substantially recognized by this court. (Mount v. Commonwealth, 2 Duv., 94.)

6. Another exception by appellee Prowse relates to three votes alleged to have been cast for him that were not recorded; two recorded for Cowan not cast for either of them; and two others who, it is contended, voted for Prowse, but were recorded and counted for Cowan. It seems to us it would be a dangerous precedent for a court to undertake to add to the record and count votes it does not show were cast; and not less so to take from the record votes it shows were actually cast.

In Anderson v. Winfree, 85 Ky., 597, it was held that when, in case of voting *viva voce*, it can be made to appear, by oral testimony, the vote of a person cast for a candidate was by mistake of the clerk recorded for his opponent, such mistake ought to be corrected; but if the proof is doubtful, the record made by the clerk ought to stand. Though the evidence in such case may be entirely satisfactory that a mistake was made, it does not necessarily follow it was committed by the clerk, for the voter may himself have inadvertently called, or presented to the officer of election, the name of the candidate he did not really intend to vote for, and if so the record ought not to be changed. But whether the alleged mistake as to the two votes under consideration was made by the clerk is a question of fact, like that made by the parties respectively and argued at length by counsel in regard to

a very large number of other disputed votes; and as the contesting Board and circuit court concurred in finding the evidence insufficient to overcome the presumption of verity of the record, we do not think that finding should be reversed by this court.

7. It appears the contesting board decided thirty-six votes recorded for Prowse and twenty-five recorded for Cowan, illegal, because cast out of precincts in which the voters severally resided, notwithstanding the right was assumed by it to have been exercised in each case under color of orders of the county court. But that decision was wholly reversed by the circuit court for the reason stated in the judgment, and now urged by counsel, that the county court had general jurisdiction conferred by statute to change voting precincts of the county, and consequently, orders made from time to time for that purpose can not be questioned collaterally.

Section 5, article 2 of the former Constitution provided that the General Assembly should divide each county of the Commonwealth into convenient election precincts, or might delegate power to do so to such county authorities as designated by law. And in pursuance thereof power has been given by statute to county courts to change election precincts and voting places. Consequently they may be treated as having general jurisdiction of the subject. But a distinction must be observed between an order of court changing the boundary line of a precinct, or place of voting therein, which is presumed to have been made in every case for public convenience, and in strict compliance with the statute, and arbitrarily transferring the voting place of a person from one precinct to another without an actual and definite change of the division line

being made, or if made at all, done without regard to lo-
cation or continuity of such line.  The latter, being a
mere grant of personal privilege, the Legislature had no-
power to do itself, nor could delegate such power to any
tribunal.  Therefore every order of a county court for
transfer of the voting place of a person without so chang-
ing the division line of the two precincts as to include his
place of residence within the boundary of the one to
which the transfer is attempted to be made is absolutely
void.  For if such personal privilege may be legally
granted to one, it can as well be given to every other per-
son applying therefor; thus practically effacing precinct
boundaries required by the Constitution to be established
and kept distinguishable, and rendering it in many cases
uncertain in which of two precincts persons reside and
have the legal right to vote.

While it is not indispensable for precinct lines to be
fixed by instrumental survey and measurement, they
should be so fully and clearly described by roads, water-
courses, adjacent farms, or tracts of land or other known
objects, as that their true location will be certain, or capa-
ble of being made certain.  For not only is it a matter of
public concern that votes be legally cast, but the Consti-
tution makes no distinction between the full and certain
enjoyment of the right of free suffrage by every one enti-
tled to vote, and the absolute and unquestioned security
of any other right.  And to render transfer of the voting
place of a person valid, it is necessary not merely that the
division line between precincts be so changed as to include
his place of residence, but that the new line be made as
definite and certain as was the original line.  But an order
that transfers the voting place of a person by changing

the division line so as to include his farm in the precinct to which he applies to be transferred is valid; for in that case the boundary lines are preserved and described so as to be known or ascertained. And such seems to have been the character of most of the county court orders under consideration. So is an order providing for change of the line of a designated precinct so as to include a person mentioned sufficient; for according to a reasonable construction the farm or place of residence of such person is to be treated as the object by which the new line was intended to be described. But as already intimated, an order of court simply transferring the voting place of a person from one precinct to another, without any change of the line between them, is a violation of the Constitution, and all votes cast in pursuance of such order are illegal. It appears that five of the thirty-six votes for Prowse were cast in virtue of such an order of court. There was one other person who disregarded a valid county court order, and voted in a precinct different from the one in which the farm where he resided is situated, and different from where others living on the same farm voted. It is clear that holding votes of the others to be legal, as was done by the circuit court, necessarily requires his vote to be treated as illegal. There were two others who, though not in the list of thirty-six votes, did, under an order of court in operation as to them, vote outside the district in which they resided; the evidence showing they did not reside on the farm adjacent to the division line of the two precincts. They should therefore be added, making eight illegal votes cast for Prowse under color of county court orders, that were void, yet adjudged by the circuit court to be legal voters.

Of the twenty-five votes for Cowan, under consideration, it appears that six of them were cast under color of orders simply changing the voting places, without any change of precinct lines, and are illegal. Counsel for appellee refer to eight others, naming them, who, it is contended, for the same cause are illegal; but one of that number is not on the list of twenty five mentioned, and four of the eight are in the list of six, just referred to. As to the remaining three it seems to us the evidence is sufficient to show they, at the time of the election, resided on farms which, by fair construction, had been included by change of lines of the respective precincts where they voted. There are two others—T. T. and J. L. Owen—on the list of twenty-five who, it is contended by counsel for appellee, and not disputed by opposing counsel, voted out of their districts without any order of court, valid or otherwise, changing their voting place. We have not been able to find any order of court authorizing those two persons to so vote outside of the districts in which they resided, and consequently, they must be held to have cast their votes for Cowan illegally. There are four others in the same situation, but as the contesting Board and circuit court found they voted out of their districts in virtue of county court orders, and the fact is not controverted, we assume such orders were made, although not able to find them among the original papers of the case, which, instead of a transcript have, by consent of parties, been filed in this court.

Adding eight votes to the fifty-one adjudged by the lower court illegal, makes fifty-nine illegal votes to be deducted from the whole number of three thousand two hundred and fifteen recorded for Prowse, leaving three

thousand one hundred and fifty-six. There was found by the court forty-seven illegal votes cast and recorded for Cowan, including, as we have indicated, improperly the vote of a person convicted of crime, but pardoned, and not including votes of two persons who were bribed, as should been done, making forty-eight to be added to the eight of the twenty-five that are illegal, and a total of fifty-six to be deducted from the whole number of three thousand two hundred and ten cast and recorded for him, leaving the number of legal votes received by him, three thousand one hundred and fifty-four, and a majority of two for Prowse.

Judgment affirmed.