## City of Covington, Ex Parte.

### (Decided October 7, 1914.)

Appeal from Kenton Circuit Court
(Criminal Law and Equity Division).

Municipal Corporations—Creation of Indebtedness **to Extend**
Water Works System—Insufficiency of Ordinance Submitting
Question to Voters.—An ordinance authorizing the submission
of the question of incurring indebtedness for the extension of a
water works system that did not "specify the amount of money
necessary to be raised annually by taxation for the interest and
sinking fund," did not comply with section 3069 Ky. Stats., as
amended by the Act of 1910, and is invalid, it being the purpose
of the legislature to require that the ordinance calling the elec-
tion should fully notify the voter of the nature and extent of the
obligation to be incurred.

FREDERICK W. SCHMIDTZ and JOHN A. RICHMOND for ap-
pellant.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

The only question involved on this appeal is whether
the city council of Covington in ordering an election and
submitting to its voters the question of whether they
would incur an indebtedness of $200,000.00 for the ex-
tension of its waterworks system, has sufficiently com-
plied with the provisions of Section 3069 Kentucky Stat-
utes as amended by the Act of 1910 (Acts 1910, p. 296),
the same being a part of the charter of cities of the sec-
ond class.

The Act, in so far as it is pertinent, is as follows:

"If, in any year, the general council shall deem it
necessary to incur any indebtedness, the payment of
which cannot be met without exceeding the income and
revenue provided for the city for that particular year,
it shall, by ordinance, order an election by the qualified
electors of the city to be held, to determine whether such
indebtedness shall be incurred. Such ordinance shall
specify the amount of indebtedness proposed to be in-
curred, the purpose or purposes of the same, *and the
amount of money necessary to be raised annually by tax-
ation for an interest and sinking fund, as herein pro-
vided.*"

The ordinance in full is as follows:

"Section 1. That there shall be submitted for the
qualified voters of the City of Covington, at the regular

November election, to be held on November 5th, 1912, the following question:

" 'Shall the City of Covington issue and sell a sufficient number of Water Works Extension and Improvements Bonds bearing interest at the rate of four per cent per annum, as evidenced by interest coupons attached thereto, and the principal thereof, payable forty (40) years after their issuance, to produce a fund of two hundred thousand ($200,000) dollars to be applied to the construction of an emergency main and to the extension of the city's water system to that part of the city which was formerly Central Covington and Latonia?'

"Section 2. Said bonds shall be payable at the City Depository of the City of Covington.

"Section 3. It shall be the duty of the city clerk, upon the passage and approval of this ordinance, to certify the same to the Clerk of the County Court, Kenton County.

"Section 4. This ordinance shall take effect and be in force from and after its passage and approval by the Mayor."

It is conceded that the ordinance sufficiently complies with the Statute in specifying the amount of indebtedness proposed to be incurred, and in indicating the purpose or purposes of the same; but it is urged that there is no sufficient compliance with the provision requiring that the ordinance shall specify, "the amount of money necessary to be raised annually by taxation for an interest and sinking fund, as herein provided."

The lower court was of opinion that as the ordinance specified the total amount of the indebtedness to be incurred, and the rate of interest to be paid upon the proposed bonds and the date of their maturity, that there was a substantial compliance with the requirements of the act, and entered a judgment upholding the validity of the ordinance, and inferentially adjudging the proposed bond issue to be valid, the vote thereon having been taken and the proposition having received the required number of votes.

It was of opinion that under these circumstances the voter might, by a simple calculation, easily ascertain the amount of interest and the amount necessary to be raised for the sinking fund each year.

But looking to the plain purpose of the Legislature in prescribing these conditions, we cannot concur in this

reasoning. It was within the legislative power to name the conditions upon which the submission might be had. Clearly it was the legislative purpose to require that the ordinance calling the election and providing for the submission should fully notify the voter of the nature and extent of the obligation which he might saddle upon his own and future generations.

It might be easily conceived that a voter would, without hesitation, vote a bond issue payable forty years hence, when in all probability he would be dead, if there is nothing in the question submitted to him to indicate that his own generation would be called upon to bear a large or any part of the burden which he is voting to incur; whereas, if there was in the form of the question submitted to him something to clearly indicate that so much interest and so much of a sinking fund must be raised by taxation each year, even during his own time, there would certainly be much more reason for him to hesitate and investigate the proposition.

However all this may be, it was manifestly the legislative intent that the ordinance should be framed in such form as to give the voter the fullest information and understanding as to the nature of the obligation proposed, and when, how, and in what manner it was to be met.

A number of authorities are referred to and discussed both in the opinion of the lower court and in appellant's brief, but in our opinion only one of them is in any wise similar to the case at bar, and that is the case of Kash v. City of Jackson, 159 Ky., 523.

Jackson being a town of the sixth class, its Board of Trustees passed an ordinance providing for the submission to the voters of the town the question whether they would incur certain indebtedness for street improvement purposes. The charter provided, after the passage of such an ordinance, that notice of the election should be given which "shall specify the amount of the indebtedness proposed to be incurred, the purpose or purposes of the same, and the amount of money necessary to be raised annually by taxation for an interest and sinking fund as herein provided." It will be observed that the requirements of the notice in that case are almost in the exact language of the requirements of the initial ordinance in this case.

There the notice of the election did not specify the amount of the interest and sinking fund to be raised each

year, although the original ordinance passed by the Board of Trustees had so specified. The Court in that case, in holding the bond issue invalid, said:

"The object of the Legislature in embracing in the statute the provision in question and others defining the duties of the board of trustees with respect to the calling and holding of an election to determine whether the indebtedness therein allowed shall be incurred, is to enable the voters of the municipality to understand in all its bearings the question upon which they are called to vote, and to safeguard their rights as taxpayers; therefore, there must be a substantial compliance upon the part of the municipal authorities with the requirements of the statute. The meaning of the statute is plain. It declares in express terms that the election notice 'shall specify the amount of the indebtedness proposed to be incurred, the purpose or purposes of the same and the amount to be raised annually by taxation for an interest and sinking fund, as herein provided.' Each of the foregoing provisions being mandatory, the omission of any of them from the notice of election will render the election invalid."

It is apparent from the reasoning of that case that this court is not inclined to depart from the plain legislative purpose of having such questions submitted to the people in such form as to enable them, as far as may be, to fully understand their nature.

But it is suggested in the opinion of the lower court that it would be impossible to tell each year during the forty-year period exactly what sum should be raised to pay interest and provide a sinking fund, by reason of the fact that it could not be foretold whether that part of the sinking fund which had already been raised in previous years would or not be productive; that it might have been so well invested or handled as to have itself produced sufficient income to partially offset the annual interest on the bonds or might not, and that, therefore, it would be impossible to state what amount would be necessary to pay the interest and create a sinking fund for any one year after the first year.

But it is sufficient in answer to this to say that this Court has already held that it is a sufficient compliance with the terms of such a statute if it be provided in the ordinance or the notice, as may be required by the statute, that the annual assessment for the purpose of pay-

ing the interest and creating a sinking fund *shall not exceed* a stated amount; that is to say that after the money in the sinking fund has become productive of income, the annual levy each year may be made only for such an amount (not exceeding the amount originally specified) as would pay the interest on the bonds and provide the necessary sinking fund, taking into account the income from the sinking fund on hand.

The judgment is reversed, with directions to enter a judgment declaring the election invalid.