## Barry v. Town of New Haven, et al.

(Decided January 8, 1915.)

### Appeal from Nelson Circuit Court.

1. **Municipal Corporations—City of Sixth Class—Indebtedness—Election to Incur.**—In order for a municipality of the sixth class to incur an indebtedness for a public lighting system under a vote of the people, notice of an election for that purpose must be given as required by Section 3705 of the Kentucky Statutes, stating the purpose of the election, the amount of money necessary to be raised annually by taxation for an interest and sinking fund to pay the proposed indebtedness.

2.  Municipal Corporations—Creation of Indebtedness.—Notice of Election.—A notice of an election under Section 3705 of the Kentucky Statutes by a municipality of the sixth class to incur an indebtedness for a public lighting system, which states the amount of the indebtedness proposed to be incurred, the purpose of the same, and which specifies "the amount necessary to be raised annually by taxation for sinking fund will be $400.00, and the amount of money necessary to be raised annually for interest will be $225.00 for the first year, and $20 less each subsequent year," is sufficiently specific to satisfy the statute.

3.  Municipal Corporations—Election Upon Bond Issue—Validity of Election.—Where four or five legal voters voted in a general election for United States Senator and other officers, and left the voting place, and afterwards returned to the voting place and voted in an election upon a proposed bond issue by the town, the action upon the part of the voters and the officers of the election was irregular, but did not invalidate the election upon the bond issue.

4.  Municipal Corporations.—Creation of Indebtedness.—In determining whether or not the proposed indebtedness to be incurred by a municipality for a lighting plant will exceed the constitutional limit of three per cent of the taxable property of the town, the probable cost of maintaining and operating the lighting plant in the future cannot enter into the question; the constitutional prohibition contemplates a present and not a future indebtedness.

5.  Municipal Corporations—Town Trustees—Quorum.—A majority of a quorum of a board of town trustees is sufficient to take action unless there be some other rule established by the constitution or the charter.

6.  Elections.—Where the election officers failed to perform their clerical statutory duty of detaching and destroying the unused ballots, but returned them to the clerk, their action constituted a mere irregularity, which did not invalidate the election.

KELLEY & KELLEY for appellant.

R. C. CHERRY for appellees.

OPINION OF CHIEF JUSTICE MILLER—Overruling motion to reinstate injunction.

New Haven, in Nelson county, is a city of the sixth class. An election was held in said town on November 3, 1914, upon the question of authorizing the board of trustees to create an indebtedness of $4,500.00, and to issue bonds therefor, for the purpose of building a system of electric lights for the town. Sixty-four votes were cast in favor of the bond issue and thirty-two votes were cast against it. It thus received the necessary two-thirds of all the votes cast upon that question, as is required

by Section 157 of the Constitution. On November 14, 1914, the plaintiff, Barry, a citizen and taxpayer of New Haven, brought this action to enjoin the issuing of the proposed bonds upon the following grounds:

(1) The notice of the election did not specify the amount of indebtedness proposed to be incurred, and did not state the amount of money necessary to be raised annually for interest and sinking fund.

(2) The ordinance was illegal and void because it failed to set out particularly, definitely and specifically the amount of indebtedness proposed to be voted; how it was to be paid; the interest the principal was to bear; the kind and character of same; and the question submitted upon the ballot was not sufficiently specific.

(3) The election was void because four or five voters, after having entered the polling place and voted in the regular election for United States Senator and other officers, left the room wherein the election was held, and subsequently returned to said polling place and were given ballots and voted in the town election upon the question of the bond issue.

(4) The notice, ordinance and election were invalid because the amount of the indebtedness proposed, together with the cost of operating and maintaining the lighting system, will exceed three per cent of the total taxable property of the town, the maximum limit authorized and permitted by the Constitution.

(5) The election was void because, when the acts complained of were done, the board of trustees of the town was composed of only four members instead of five, as required by law, and the board was for that reason illegally constituted; and

(6) The election was void because the election officers failed to detach and destroy the unused ballots and return them to the clerk of the county court, attached to the stub of the ballot book, as required by the statute.

The case was tried upon the following agreed statement of facts:

"(1) The exhibits 'A,' 'B' and 'C' referred to and filed with the plaintiff's petition, herein, are true copies of the Ordinance and the Orders of the Board of Trustees of the Town of New Haven, Ky., ordaining and adopting said ordinance and directing the notice to be given. And there is no further ordinance or order made or entered by said board of trustees concerning the holding of said election involved in this suit.

"(2) That the notice of said election was published in two weekly issues of the New Haven Echo, a weekly newspaper published in New Haven, Nelson county, Ky., and that the notice as published is contained in copies of said papers issued Oct. 1 and 15th, 1914, which are filed in this suit, and the ordinance published in one of said issues as shown by exhibit.

"(3) That the ballot used in voting at said election is filed with the plaintiff's petition in this suit and is marked 'Educational Ballot,' and said exhibit is a *fac simile* of the ballot used at said election, except that it is marked 'Education Ballot.'

"(4) That the exhibit filed with the plaintiff's petition, marked 'Canvassing Board' for identification, is a true copy of the certificate issued and signed by the Board of Election Commissioners of Nelson County, Ky.

"(5) During the holding of said election four or five persons who were legally qualified to vote in New Haven, Nelson county, Ky., for State and county officers and also in said municipal election, and who were not election officers, entered the said polling place where said election was being held and were given a ballot by the said election officers to vote in the State and county election, and, after having cast their said ballots in the regular State and county election, and after same had been deposited in the ballot box, they left said polling place without having voted in said municipal election, and afterwards returned during the voting hours and re-entered said polling place and were given a ballot to vote in said municipal election on the question of creating said indebtedness, which ballot was cast by said voters and accepted by the officers of said election and deposited in said ballot box with the other ballots cast on said question and counted by the election officers and included in and were a part of the total of 96 votes cast on said question.

"(6) It is further agreed that the taxable value of the property in New Haven is as set out and stated in the petition.

"(7) At the time of the adoption of the ordinance respecting said election by the board of trustees of the town of New Haven said board contained only four members, who constituted the said board, the vacancy in said board having been occasioned by the prior resignation of one of its members.

"(8) The unused ballots at said election were not detached from the book of ballots used at said election or destroyed by the election officers, but all of the unused ballots were returned by said election officers to the clerk of the Nelson County Court. The stub book shows that 97 ballots were taken out and the return of the election officers duly certified by them shows that 96 were voted and one was not voted, and all the other ballots remain in the book. The ballot taken out of the book but not voted was returned by the officers of the election as a spoiled ballot."

The clerk of the circuit court granted an injunction in accordance with the prayer of the petition, and the circuit judge having dissolved said injunction, the plaintiff has applied for a re-instatement thereof. On account of the importance of the questions presented, it was brought before one of the divisions of the court in order that the ruling might have the approval of a majority of the judges of this court.

We will consider, briefly, the objections as above stated, the first and second objections being considered together.

(1) Section 3705 of the Kentucky Statutes, which is a part of the charter of cities of the sixth class, in so far as it concerns the question before us, reads as follows:

"If at any time the board of trustees shall deem it necessary to incur any indebtedness, the payment of which cannot be met by the levy authorized by law, they shall give notice of an election, by the qualified electors of the town, to be held to determine whether such indebtedness proposed to be incurred, the purpose or purposes of the same, and the amount of money necessary to be raised annually by taxation for an interest and sinking fund, as herein provided. Such notice shall be published for at least two weeks in some newspaper published in, or of general circulation in, such town, or by posting written or printed notices at three or more public places in such town. If, upon a canvass of the votes cast at such election, it appears that two-thirds of all the qualified electors in such town shall have voted in favor of incurring such indebtedness, it shall be the duty of the board of trustees to pass an ordinance providing for the mode of creating such indebtedness and of paying the same."

An inspection of the notice of the election shows that it accurately followed the requirements of the statute. It stated the amount of the indebtedness proposed to be incurred; the purpose of the same; the amount of money necessary to be raised annually for interest and sinking fund; and it specifically says that the "amount necessary to be raised annually by taxation for a sinking fund will be $400.00, and the amount of money necessary to be raised annually for interest will be $225.00 for the first year and $20 less each subsequent year." The notice was published in two issues of the New Haven Echo, a weekly newspaper published in New Haven and of general circulation.

Upon this point it is sufficient to say that the requirements of the statute have been carefully followed almost to the letter. All the formal preliminaries leading up to the election were strictly and in good faith pursued. City of Covington, ex parte, 160 Ky., 146, relied on by the plaintiff, is not controlling. Covington is a city of the second class, and its charter required the ordinance to state the amount of money necessary to be raised annually by taxation for interest and sinking fund. In the Covington case, however, the ordinance did not comply with the statute in this particular. But in the case at bar the statute requires that the amount of money necessary to be raised annually by taxation must be set out in the notice, and, as we have shown, the notice fully satisfied the statute.

In Kash v. City of Jackson, 159 Ky., 523, the notice was defective because it did not specify the amount of interest and sinking fund to be raised each year. But the ordinance in that case did set out those facts; and it was contended that the ordinance cured the defective notice. The court overruled that contention and held that the notice must so provide, because the statute expressly so held. See also Igleheart v. City of Dawson Springs, 143 Ky., 140.

When the notice of election is given in the form required by the statute, and the requisite majority has approved the creation of the indebtedness, the board of trustees may then pass an ordinance providing for the mode of creating the indebtedness and levy a tax to pay the annual interest and raise a sinking fund to meet the debt at its maturity. The indebtedness is not created until the city, by means of an election, has obtained the

assent of two-thirds of its qualified voters voting on the question, and issued the bonds evidencing the debt. The tax required to pay the interest and raise the sinking fund may be levied at any time before the bonds are issued and sold. O'Brien v. City of Owensboro, 113 Ky., 680; Fowler v. City of Oakdale, 158 Ky., 610.

(3) It is next insisted that the election was invalid because four or five voters, after they had voted in the election for United States Senator and other officers, and had left the voting place, returned to the voting place and were permitted to vote in the election upon the bond issue. It is conceded that these voters were legal voters in the town, and had a right to vote on that question; but the complaint is that they should have voted in both elections upon their first entrance into the voting place, and that after having voted in one election and departed they could not return and subsequently vote in the other election. While this practice is irregular, it is by no means fatal. The voting on the bond issue was by a separate ballot which was deposited in a ballot box used for that purpose only; and it being conceded that the voters had the right to vote in the bond issue election, it is difficult to see how the irregularity vitiated the election. Furthermore, it in no way appears how any of these four or five voters voted, or that the result of the election would be changed by excluding their votes. To declare the election void on this account would be to overthrow the verdict of the voters, fairly, accurately and truthfully expressed in the result. When it is once admitted that no person voted at said election who did not have the legal right to vote, and that the election is free from fraud or bad faith on the part of anyone; that the result fairly expresses the will of the majority, the courts ignore any mere irregularity in the method of establishing that result.

In City of Cynthiana v. Board of Education, 21 Ky. L. R., 731, 52 S. W., 969, the court said:

"The rule is that where there has been a fair and free expression of the popular will, a mere irregularity in conducting an election will not invalidate it. (7 Lawson's Rights, &c., Section 3798; Trustees District 88 v. Garvey, 80 Ky., 159; Clark v. Leathers, 9 Ky. Law Rep., 558.)"

See also McCreary on Elections, Sec. 126; and Anderson v. Winfree, 85 Ky., 610.

In Trustees Common School District No. 88 v. Garvey, 80 Ky., 163, it is said:

"The statute, however, should be construed with a view of carrying into execution the legislative will; and when an election has been held and the tax imposed, the burden is on the taxpayer who resists its collection to show that the election is void. A mere irregularity in conducting it will not authorize the chancellor to interfere and prevent the imposition of a burden the taxpayer has assumed for the purpose of aiding a great public interest."

And in Cowan v. Prowse, 93 Ky., 156, this court laid down the general principle that a mere irregularity on the part of officers of an election, or their omission to observe some directory provision of the law would not vitiate the poll. See also Anderson v. Likens, 104 Ky., 699; Napier v. Cornett, 24 Ky. L. R., 576, 68 S. W., 1076; Cooley's "Constitutional Limitations," 7th Ed., pp. 928-930.

(4) Little attention need be paid to the fourth objection, that the indebtedness, together with the cost of operating and maintaining the lighting system, will exceed three per cent of the taxable property of the town, as limited by the Constitution, because said objection is not sustained by any proof. On the contrary, the petition, which, under the stipulation is to be taken as true in this respect, shows the taxable property of the town is $291,854.00, three per cent thereof being $8,755.62, or nearly twice the amount of the proposed indebtedness. The probable cost of maintaining and operating the plant in the future cannot enter into the question. The constitutional prohibition contemplates a present and not a future indebtedness.

(5) The board of trustees, as constituted by statute, consisted of five members; but at the time it called the election it consisted of only four members. All four members were present, however, and voted in favor of all the steps that were taken. They constituted a legal quorum, and the fact that one member had resigned in nowise affected the legality of the action taken. A majority of a quorum is sufficient unless there be some other rule established by the Constitution or the charter. Cooley's "Constitutional Limitations," 7th Ed., p. 201.

Section 3697 of the Kentucky Statutes, being a part of the charter of sixth class cities, expressly provides

that a majority of the members of the board of trustees shall constitute a quorum for the transaction of business.

In Shugars v. Hamilton, 29 Ky. L. R., 127, 92 S. W., 564, and under a precisely similar provision of the charter of cities of the fifth class, it was held that four members of a council of six members constituted a quorum for the transaction of business.

It follows that the four members in the case at bar were fully authorized to exercise, as they did, the power of the board.

(6) The objection that the election officers failed to perform their clerical statutory duty of detaching and destroying the unused ballots, but returned them to the clerk, is without merit. At most it was a mere irregularity which would not invalidate the election. See authorities cited *supra*. Graham v. Graham, 24 Ky. L. R., 548, 68 S. W., 1093, is, in effect, conclusive against this objection. In that case the polls were open about an hour later and closed about an hour earlier than the law required; the ballot box in which the ballots were deposited during the voting hours remained unlocked, and the number of unused ballots was not certified at all. In the absence of evidence showing that someone had been prejudiced by these irregular actions of the election officers, the court declined to nullify the election.

After a careful review of the facts of this case, and all the objections taken to the election, we are of opinion that all the necessary steps were taken to authorize the contemplated bond issue, and that the circuit judge properly dissolved the injunction.

The motion to reinstate the injunction is overruled. Judges Settle, Hannah and Hurt concur in this opinion; and by order of the court this opinion will be printed in the Official Reports.